Whyte, Judge,
 

 concurred, and gave his opinion at large.
 

 The question before the court is this : has the Circuit Court erred in the appointment of Massingale to be the guardian of his deceased son’s children? By act of Assembly, 1762, ch. 5, the preference of appointment of a guardian is given to the parent, and if the par
 
 *288
 
 ent does not choose to exercise this power, it is vested in the Superior and Inferior Court. This act makes a radical change in cases of this nature from what it was by the common law. Thence upon the death of the tenant, the law cast the wardship upon a certain individual, designated with as much precision, according to the tenure, as it did the tenancy or the inheritance upon the person who first sustained the character of heir. The intervention of no court was necessary to sanction the appointment, and no portion of the time of tutelage was
 
 lost, between the death of the
 
 ancestor and the commencement of the wardship. The law pointed out the person of the guardian, and the devolution of duty upon him was immediate, accompanied with all the rights it gave, and subjecting him to all the consequences of a culpable delinquency in not exerting them. The first point then is, has the parent exercised this power ; has he by his will appointed a guardian for his infant children ? He has not done so expressly ; but it is contended for the appellant that he has done so by implication; and that from the provisions of the will it is to be fairly inferred that he intended the widow to be the guardian. If *' otherwise, why give her the furniture, debts, &c., and express that they are to educate, maintain, and support the children till they arrive at the age of 21 ? The will presents a very different intention in the testator to my mind ; and I draw a very different inference from its provisions. I think the fair construction to be, that he did not intend thereby to constitute his wife guardian to his children ; but that he made such a will and such provisions therein as a prudent man, contemplating the possibility of the happening of what has occurred. Suppose him then, at the time of making this will, seriously looking into his situation, and his affairs, his property and his family, that he was about to leave. He could not possibly overlook, in the age of his wife, the possibility of a second marriage, and a step-father to his children, and that he did not do so, I think the language of this will clearly evinces. He has not said in express words, My wife may marry again ; it is probable such an event will take place ; I will therefore guard against it. It would perhaps have been indiscreet thus to have expressed himself in his will. But he has acted by its dispositions as if he had done so; like a prudent man, avoiding the indiscretion of bringing forward such ideas, and anticipating their contingency by his foresight and precaution, he leaves a portion of his lands and negroes specifically
 
 *289
 
 to each of his children, a specific part also to his wife, and his furniture and debts, &c., to be used by her in their education and assistance till 21; thus tacitly inferring, If you do not marry, you will perhaps be a proper person for the guardian of my children, and if you are, the County Court will appoint you. If you are appointed, and afterwards do not discharge the duties you have undertaken, the same authority will displace you, and make another appointment. If you marry, you will clearly be an unfit person. I will - * therefore make a particular designation to each of my children of their reasonable share, and this will, in such an event, obviate many difficulties that might otherwise accrue in consequence thereof. But you may live single; I will hold out this idea by my will, and give you a portion, which ought to be used in conjunction with them. From this view, it clearly appears to me that the testator did not make his wife testamentary guardian, but the reverse. That is, the indication of all the provisions in the will shows that he did not intend such a disposition, and evidently q>oint to such a state of things as future times and contingencies might develop.
 

 My opinion being that the parent has not in this instance exercised the power given him by law, of appointing a guardian for his children, it comes next to be considered, have the remaining constituted authorities exercised it correctly? This power is lodged in these tribunals most properly; at once showing the wisdom of our republican institutions, and their superiority over the provisions of the common law in this respect. The County Court is presumed, and its members in fact do have a knowledge of all the citizens of the county. They are thereby well enabled to make a selection, which the law has intrusted to their discretion; not confined toper-son or place, not restricted to connection or sex, they extract from the aggregate of the whole population of the county, and, taking all circumstances into consideration, make the appointment.
 

 A duty thus enjoined, thus exercised and executed, we will presume to have been done correctly, until the contrary is proved. Suggestion or surmise will not be listened to. Who is the person appointed in the present case by the County Court ? The grandfather of the orphans, on the father’s side, upon a contest with the appellant, who married the mother. Independent of other considerations, which no doubt * were duly appreciated by the County Court, the respective relationship of these parties
 
 *290
 
 approves the discreetness of the appointment. The inconveniences resulting from a commixture of property, is one of the least of the evils that might have been attendant on the success of the claim of the appellant. The appellee’s claim steers clear of this objection ; and is further supported by the ties of affection and nature, prohibiting, in case of death, the possibility of advantage from the accession of property, as necessarily incident thereto. No objection, therefore, Is perceived to the person of the appellee in this appointment. And with respect to the restriction imposed by the County Court as to the quantum of interest confirmed by the guardianship, this is remedied by the County Court; so that I concur with the opinion just delivered, that there is no error on this record, and consequently, that the judgment of the Circuit Court be affirmed.
 

 See King’s Digest, 7051, 7052, 7058.